IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Equal Employment Opportunity Commission, | ) ) | Case No. 6:22-cv-01960-JDA |
| | ) | |
| Plaintiff, | ) | **<u>OPINION AND ORDER</u>** |
| | ) | |
| v. | ) | |
| | ) | |
| Dave Hall, | ) | |
| | ) | |
| Intervenor-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Fluor Federal Global Projects, Inc.; | ) | |
| Fluor Corporation; | ) | |
| Fluor Enterprises, Inc., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court on cross motions for summary judgment filed by Plaintiff Equal Employment Opportunity Commission (the "EEOC") and Defendants Fluor Federal Global Projects, Inc. ("FFGP"); Fluor Corporation; and Fluor Enterprises, Inc. (collectively, "Defendants"). [Docs. 154; 156.] The EEOC filed this action under the Americans with Disabilities Act ("ADA") on September 30, 2021, in the United States District Court for the Northern District of Georgia. [Doc. 1.] Subsequently, the EEOC filed an Amended Complaint, and Dave Hall was granted the right to intervene. [Docs. 5; 16.] On June 22, 2022, the case was transferred to this Court. [Doc. 22.] In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2), D.S.C., this matter was referred to a United States Magistrate Judge for pre-trial proceedings.

On July 19, 2024, United States Magistrate Judge Thomas E. Rogers, III issued a Report and Recommendation ("Report") recommending that the EEOC's motion for partial summary judgment be denied and that Defendants' motion for summary judgment be granted in part and denied in part. [Doc. 192.] The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. [Doc. 192-1.] The EEOC, Hall, and Defendants filed objections and replies on August 2, 16, and 23, 2024. [Docs. 193–99; 201.] At the request of the Court, the parties also filed supplemental briefing. [Docs. 214–17; *see* Doc. 208.] The motions are now ripe for review.

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court is charged with making a de novo determination of any portion of the Report to which a specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). The Court will review the Report only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a de novo review, but

instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation" (internal quotation marks omitted)).

## BACKGROUND

In ruling on a motion for summary judgment, this Court reviews the facts and reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013). Viewed in the light most favorable to Plaintiff, the summary judgment record reveals the following facts.

**The Military's Fitness-For-Duty Standards**

FFGP hired Hall in June 2010 as a food services worker for a project in Afghanistan, and Hall was elevated to a Senior MWR Technician prior to his termination on August 29, 2019. [Docs. 156-3 at 9 (95:5–8); 156-4; 156-11; 156-24 at 5.] FFGP employed Hall in connection with the Logistics Civil Augmentation Program ("LOGCAP") IV contract with the U.S. Military, which explicitly required FFGP's compliance with Department of Defense ("DoD") and U.S. Central Command ("CENTCOM") "fitness for duty" standards. [Doc. 156-6 ¶¶ 3–4; 156-7 at 10–11; 156-8 ¶¶ 5–6.] Specifically, FFGP was required to "ensure the individuals they deploy are in compliance with the current USCENTCOM Individual Protection and Individual/Unit Deployment Policy, including TAB A, Amplification of the Minimal Standards of Fitness for Deployment to the CENTCOM [Area of Responsibility], unless a waiver is obtained in accordance with TAB C, CENTCOM Waiver Request." [Doc. 156-7 at 10.] At the time Hall was terminated, the "Modification Thirteen" or "MOD 13" was the Individual Protection and Individual/Unit Deployment Policy in effect. [Docs. 156-6 ¶ 4; 156-8 ¶ 7.]

3

The MOD 13 Amplification sets out "the minimal standards of fitness for deployment to the CENTCOM AOR," which "include[] a non-comprehensive list of specific medical conditions that are disqualifying in the absence of a waiver." [Doc. 156-10 ¶ 11.] It further provides that "a waiver request cannot be submitted for individuals with certain disqualifying medical conditions." [*Id.* ¶ 16.] The MOD 13 Amplification lists as one of the "[d]ocumented medical conditions precluding medical clearance":

> E. Cancer:
>
>> 1.     Cancer for which the individual is receiving continuing treatment or which requires frequent subspecialist examination and/or laboratory testing during the anticipated duration of the deployment. . . .
>>
>> . . . .
>>
>> 3. All cancers should be in complete remission for at least a year before a waiver is submitted.

[Doc. 156-9 at 27, 31.]

**Occucare's Application of MOD 13**

Fluor International Inc. contracted with Occucare International ("Occucare") to conduct employee fitness-for-duty examinations for FFGP employees. [Docs. 156-6 ¶ 5; 156-39 ¶¶ 1–2.] At the time in question, the parties' contract provided that Occucare was solely responsible for making fitness-for-duty determinations, applying the Minimum Standards set forth in MOD 13, and deciding whether a waiver request could or would be submitted to the Military. [Docs. 156-6 ¶ 5; 156-39 ¶ 3.] Its decisions were based on directives gained by a review of MOD 13 and PPG-Tab-A to MOD 13 as well as through experience and interaction with the Command Surgeon General and/or their designees. [Doc. 156-39 ¶ 3.]

Occucare understood MOD 13 was mandatory when determining whether FFGP employees were fit for duty.[1]  [*Id.* ¶ 6.]  With respect to cancer and for purposes of MOD 13, Occucare considered the date of the removal of the cancer to be the onset of remission; thus, for a waiver to be submitted for cancer under MOD 13, the cancer had to have been removed at least one year prior to the waiver submission, without any further signs of cancer.  [*Id.* ¶ 4.]  During the period that Occucare conducted fitness-for-duty examinations for FFGP under MOD 13, Occucare did not make any waiver submissions on behalf of FFGP employees or prospective employees for cancer that had not been in remission for at least one year.  [*Id.*]

**Hall is Diagnosed with Prostate Cancer, Undergoes a Prostatectomy, and is Medically Disqualified from Continuing to Work**

In the summer of 2019, Hall received a diagnosis of prostate cancer, decided to have surgery to remove his prostate, and informed FFGP of the upcoming procedure. [Doc. 156-3 at 11 (101:13–103:8).]  On August 9, 2019, Hall emailed FFGP a note from his physician, Dr. Scott Miller, stating that his surgery was scheduled for August 12, 2019, and that he would have a "2–3 week post-op recovery."  [Doc. 156-12 at 2–3.]  FFGP subsequently placed Hall on medical leave.  [Doc. 156-13 at 2–3.]

On August 27, 2019, Hall submitted his return-to-work paperwork, completed by Dr. Miller, which stated that Hall was "[c]leared to work."  [Doc. 156-15; *see* Doc. 156-3 at 12 (119:23–120:10).]  An Operative Note attached to the paperwork stated that Dr. Miller found "[n]o evidence of disease outside of the prostate."  [Doc. 156-15 at 4.]  FFGP forwarded Hall's return-to-work paperwork to Occucare that same day.  [Doc. 156-16.]

---

[1] DoD Instruction 3020.41 provides general guidance, which is subject to the more specific directives in MOD 13.  [Doc. 156-39 ¶ 6; *see* Doc. 65 at 13–14.]

Occucare conducted a fitness-for-duty review for Hall on or around August 28, 2019, and sent an email to Fluor[2] Human Resource Specialist Cindy Hyde stating that Hall was "[m]edically disqualified" under MOD 13 and thus not cleared for duty because "[a]ll cancers must be in complete remission for 12 months before clearance can be considered" ("Occucare's Email"). [Doc. 156-17.] Accordingly, Hall was released from the project and his employment was terminated on August 29, 2019, and Hyde forwarded Occucare's Email to him later that day. [Docs. 156-11; 156-18.] Hall responded with an email pointing out that that Dr. Miller had stated that "the prostate was removed so there [we]re no more cancer cells" and requesting that FFGP "recommend further inquiry on this matter" for him. [Doc. 156-19 at 2.] Hyde told Hall that she would forward his message to Occucare "for clarification." [*Id.*] Receiving the forwarded message, Occucare responded, "MOD 13 is exceptionally clear: all cancers must be in complete remission for 12 months before a waiver will be considered. This is a CENTCOM issue, not ours." [Doc. 156-20.] Hyde forwarded Occucare's response to Hall. [*Id.*]

Hoping to continue working for FFGP, Hall spoke with April Rabb around August 29, 2019, and told her that even if he was not fit to continue in Afghanistan, he was otherwise fit to work and asked if there were positions for him in the United States. [Doc. 156-3 at 6 (66:3–67:10).] She told him that they had "to follow protocol" and they would do "whatever Occu[c]are said." [*Id.* (67:3–13).]

---

[2] Other than in its discussion of exhaustion of remedies, the Court does not distinguish between the different Fluor entities in this decision.

**Hall's EEOC Charge and the Present Action**

Hall filed a charge of discrimination with the EEOC (the "EEOC Charge") on or around September 10, 2019, alleging he was discharged because of his disability in violation of the ADA. [Doc. 156-30.] On May 12, 2021, the EEOC issued a letter of determination, concluding there was reason to believe violations of the ADA had occurred and inviting the parties to join in conciliation efforts. [Doc. 156-36.] On June 7, 2021, the EEOC issued a notice of failure of conciliation, advising Defendants that it had been unable to secure from Defendants a conciliation agreement acceptable to the EEOC. [Docs. 5 ¶ 12; 74 ¶ 12.]

The EEOC subsequently filed this action. [Doc. 1.] Its Amended Complaint asserts a single claim alleging that Defendants intentionally discriminated against Hall on the basis of his disability in violation of the ADA because they "could have provided Hall with a waiver that would have allowed him to return to work, in accordance with the DoD MOD 13 Fitness for Duty standards but failed to do so." [Doc. 5 ¶ 24.] The EEOC seeks injunctive relief, back and front pay, actual and punitive damages, and court costs. [*Id.* at 6–7.] Hall's Intervenor Complaint alleges that he was terminated as a result of intentional disability discrimination and that Defendants denied him a reasonable accommodation in violation of 42 U.S.C. § 12112(a), (b)(1), (b)(3), and (b)(5). [Doc. 17 ¶¶ 35–44.] Hall requests declaratory and injunctive relief; back and front pay; prejudgment interest; liquidated, compensatory, and punitive damages; and court costs, including attorneys' fees.[3] [*Id.* at 12–13.]

---

[3] In supplemental briefing ordered by the Court, both the EEOC and Hall make clear that they are not bringing claims under a disparate-impact theory. [Docs. 215 at 1–3; 216 at 2.]

## APPLICABLE LAW

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of

8

summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

**Exhaustion of Administrative Remedies**

As a threshold matter, in support of their summary judgment motion, Defendants Fluor Corporation and Fluor Enterprises, Inc. argued that they are entitled to summary judgment on the basis that Hall failed to exhaust his administrative remedies as to them because he did not name either of them in the EEOC Charge and instead identified his employer as "Fluor Federal Global." [Doc. 156-1 at 31–32.] The Magistrate Judge concluded that the EEOC Charge was sufficient to exhaust Hall's administrative remedies against all Defendants, applying the "substantial identity exception." [Doc. 192 at 11–14.] Defendants object to the conclusion that they are not entitled to summary judgment on the exhaustion issue and alternatively object to the conclusion that exhaustion does not

at least present a triable issue of fact. [Doc. 195 at 27–28.] The Court overrules Defendants' objections.[4]

Before filing suit under the ADA, a plaintiff must exhaust his administrative remedies by filing a charge with the EEOC. 42 U.S.C. § 12117(a) (stating that the procedures set forth in 42 U.S.C. § 2000e-5 apply to ADA claims); *see also Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 593 (4th Cir. 2012) ("Modeled after Title VII of the Civil Rights Act of 1964, the ADA incorporates that statute's enforcement procedures, including the requirement that a plaintiff must exhaust his administrative remedies by filing a charge with the EEOC before pursuing a suit in federal court." (internal citations omitted)). In South Carolina, the charge must be filed within 300 days after an "alleged unlawful employment practice" occurred. 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e–5(e)(1). The failure to file a timely charge with the EEOC bars the claim in federal court. *McCullough v. Branch Banking & Tr. Co.*, 35 F.3d 127, 131 (4th Cir. 1994) ("When the plaintiff fails to file such a complaint in a timely fashion with the EEOC, the claim is time-barred in federal court.").

"Generally, failure to name a party in the EEOC charge means the plaintiff did not exhaust administrative remedies against that party, and a district court must dismiss the case." *Waters v. Univar Sols. USA, Inc.*, No. 2:22-02071-DCN-MGB, 2023 WL 1479095, at *3 (D.S.C. Feb. 2, 2023). Though the Fourth Circuit has not addressed the issue,

---

[4] In their memorandum supporting their summary judgment motion, Defendants argued only that this Court, as a matter of law, should not the apply substantial identity exception on these facts. [Doc. 156-1 at 31–32.] In their objections, Defendants alternatively argue that a genuine dispute of material fact exists concerning the exhaustion issue. [Doc. 195 at 27–28.] Defendants offer no support for their alternative objection that an issue of material fact remains, and thus this objection is overruled.

district courts within this Circuit have applied a "substantial identity" exception when "the defendant through some relationship with the named respondent had notice of the charges and participated in the conciliation process." *EEOC v. Am. Nat'l Bank*, 652 F.2d 1176, 1186 n.5 (4th Cir. 1981). Defendants emphasize that in *Waters*, the court expressly declined to apply that exception when the complainant was represented by counsel when filing the EEOC charge. [Doc. 195 at 28.] The court in *Waters* explained that the exception was based on the established principle "that the pleadings of lay complainants should be construed liberally" and "the rationale of liberal construction does not apply when an attorney prepares the EEOC charge on behalf of his client because attorneys (ideally) should be schooled in the technicalities of formal pleading." *Waters*, 2023 WL 1479095, at *4.

The EEOC Charge in this case was filed on September 10, 2019, at a time when Hall was not represented, even though he subsequently retained counsel. [Docs. 156-30; 156-34; 163-15.] Defendants contend that because Hall could have amended the EEOC Charge once he obtained counsel, the *Waters* exception to the "substantial identity" exception does not apply. [*See* Docs. 195 at 28; 156-1 at 31–32 (citing 29 C.F.R. § 1601.12(b) ("A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received.")).]

11

The Magistrate Judge concluded, however, that the *Waters* exception should not be extended to cover these facts, explaining:

> Both Waters and the case on which it relies, Olvera-Morales, specifically state that they decline to apply the substantial identity exception "when an attorney prepares the EEOC charge on behalf of its client." Waters, 2023 WL 1479095, at *4; see also Olvera-Morales, 2008 WL 939180, at *2 (declining to apply the substantial identi[t]y exception because the plaintiff "was represented by counsel at the time she filed her initial EEOC complaint"). Hall was not represented by counsel at the time he filed his charge with the EEOC and, thus, the liberality afford[ed] lay pleadings is applicable to his charge. See Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll., 848 F.2d 457, 460 (4th Cir. 1988) (holding that because lawyers do not typically complete EEOC charges, district courts must construe them liberally).

[Doc. 192 at 13.] The Magistrate Judge also noted several courts have held that the substantial identity test applies regardless of whether the plaintiff is represented by counsel when the charge is filed. [*Id.* n.4 (citing *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 484–85 (5th Cir. 2014); *Turk v. Salisbury Behavioral Health, Inc.*, No. 09-CV-6181, 2010 WL 1718268, at *3 (E.D. Pa. Apr. 27, 2010); *Olvera-Morales v. Sterling Onions, Inc.*, 322 F. Supp. 2d 211, 216 (N.D.N.Y. 2004)).] The Court agrees with the Magistrate Judge's reasoning and his conclusion that Hall exhausted his administrative remedies as against all Defendants. Defendants' objection is therefore overruled.

**The ADA Claims**

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

### *The Intentional Discrimination Claims*

As noted, both the EEOC, in its Amended Complaint, and Hall, in his Intervenor Complaint, assert disparate-treatment claims under the ADA alleging that Hall's employment was terminated because of his disability.  In their objections, Defendants argue that the Magistrate Judge erred in recommending that Defendants' summary judgment motion be denied as to these claims.  [Doc. 195 at 20–23.]  The Court agrees.

Where an employee presents no direct evidence of discrimination, the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to a plaintiff's wrongful termination claim under the ADA.  *See Neal v. E. Carolina Univ.*, 53 F.4th 130, 135 (4th Cir. 2022).  Therefore, absent evidence of discrimination and where the relevant prima facie case is established, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the alleged wrongful termination, and the plaintiff bears the burden of showing that reason is a pretext for disability discrimination.  *McDonnell Douglas*, 411 U.S. at 802–04.  To establish a prima facie claim for ADA wrongful termination, a plaintiff must show that "(1) []he was a 'qualified individual with a disability'; (2) []he was discharged; (3) []he was fulfilling h[is] employer's legitimate expectations at the time of discharge; and (4) the circumstances of h[is] discharge raise a reasonable inference of unlawful discrimination." *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 272 n.9 (4th Cir. 2004).

As to the prima facie case, Defendants argued in support of their summary judgment motion that the EEOC and Hall (collectively, "Plaintiffs") have not forecasted sufficient evidence of the fourth element—that Hall's discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination—nor is there

a factual dispute as to pretext even assuming Plaintiffs have made out a prima facie case. [Doc. 156-1 at 28–30.]  Defendants contended that "[t]he undisputed record is that [Hall] was released from the project because Occucare determined he was not fit for duty under the Military's requirements (MOD 13)" and that is a legitimate, nondiscriminatory reason for his discharge.  [*Id.* at 28–29.]

The Magistrate Judge concluded that Defendants are not entitled to summary judgment on Plaintiffs' discrimination claims.  [Doc. 192 at 28–29.]  He reasoned that "[t]here is direct evidence in the record that Defendants terminated Hall's employment because of his cancer" insofar as it is undisputed that the fact that Hall's cancer had not been in remission for at least one year was the reason that he could not satisfy the applicable fitness-for-duty standards.  [*Id.*]  The Magistrate Judge specifically observed that 42 U.S.C. § 12112(b)(6) "provides that the term 'discriminate against a qualified individual on the basis of disability' as it is used in § 12112(a) includes 'using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities.'"  [Doc. 192 at 29 (quoting 42 U.S.C. § 12112(b)(6)).]  The Magistrate Judge concluded that the fitness-for-duty standards used by Defendants discriminated against Hall on the basis of his disability in precisely that manner.  [*Id.*]  Nonetheless, the Magistrate Judge noted that the statute allows an employer to raise a defense to liability under subsection (b)(6) by showing that the relevant qualification standards are "'job-related and consistent with business necessity, and such performance cannot be accomplished by reasonable accommodation, as required under this subchapter.'"  [*Id.* (quoting 42 U.S.C. § 12113(a)).]  Because he concluded that an issue of fact exists as to the reasonable accommodation

14

issue, the Magistrate Judge determined that Defendants are not entitled to summary judgment on the intentional discrimination claims. [*Id.*]

In their objections and in supplemental briefing, Defendants argue that Plaintiffs do not plead discrimination under 42 U.S.C. § 12112(b)(6), which concerns disparate impact, but rather, they plead only disparate-treatment discrimination. [Docs. 195 at 21; 214 at 2–10.] Defendants contend that the Magistrate Judge erred by conflating the two types of discrimination in denying Defendants' summary judgment motion. [Docs. 195 at 21–23; 214 at 10–13.] The Court agrees.

As the Supreme Court has observed, "[b]oth disparate-treatment and disparate-impact claims are cognizable under the ADA." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 53 (2003) (noting that the ADA defines "discriminate" to include "utilizing standards, criteria, or methods of administration . . . that have the effect of discrimination on the basis of disability" and "using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability" (alteration in original) (internal quotation marks omitted)). As the Court explained, "[l]iability in a disparate-treatment case depends on whether the protected trait actually motivated the employer's decision," while "disparate-impact claims involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Id.* at 52 (cleaned up). Plaintiffs concede that only disparate-treatment claims are pled here. [*See* Docs. 215 at 1, 3; 216 at 2.]

The Supreme Court's decision in *Raytheon* is instructive. In that case, the Supreme Court reviewed facts analogous to those before the Court in the present case

15

and ruled that the Ninth Circuit erred by considering disparate-impact theory factors when reviewing a grant of summary judgment in favor of the employer on a disparate-treatment claim. *Raytheon*, 540 U.S. at 49–51. The employee in *Raytheon* alleged that the employer refused to hire him because of his record of drug addiction and/or because he was regarded as being a drug addict when the employer followed its policy against rehiring employees who had been previously terminated for workplace misconduct. *Id.* at 46–49. In opposing summary judgment, the employee argued for the first time that the employer's no-rehire policy had a disparate impact, an argument the district court rejected as untimely raised. *Id.* at 49. Nevertheless, in reversing the district court's grant of summary judgment to the employer, the Ninth Circuit reasoned, similar to the Magistrate Judge in the present case, that the no-rehire policy "screen[ed] out persons with a record of addiction." *Id.* at 51, 54 (internal quotation marks omitted).

The Supreme Court reversed, holding that "the Court of Appeals erred by conflating the analytical framework for disparate-impact and disparate treatment claims." *Id.* at 51. Regarding the Ninth Circuit's conclusion that the employer's policy screened out persons with a record of addiction and that the employer had not raised a business necessity defense, the Court explained that those are "factors that pertain to disparate-impact claims but not disparate-treatment claims." *Id.* at 54. "Had the Court of Appeals correctly applied the disparate-treatment framework, it would have been obliged to conclude that a neutral no-rehire policy is, by definition, a legitimate, nondiscriminatory reason under the ADA," and thus the only issue that would have remained would be

16

whether there was evidence that the reason given for refusing to rehire the employee was pretextual. *Id.* at 51–53. The Supreme Court added:

> By improperly focusing on [disparate-impact] factors, the Court of Appeals ignored the fact that the [employer's] no-hire policy is a quintessential legitimate, nondiscriminatory reason for refusing to rehire an employee who was terminated for violating workplace conduct rules. If [the employer] did indeed apply a neutral, generally applicable no-rehire policy in rejecting [the employee's] application, [the employer's] decision not to rehire [the employee] can, in no way, be said to have been motivated by [the employee's] disability.

*Id.* at 54–55.

In a footnote, the Supreme Court also rejected a suggestion by the Ninth Circuit that the refusal to rehire the employee violated the ADA because his workplace misconduct was related to his disability. *Id.* at 54 n.6. The Court noted that it had rejected a similar argument in *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993), in the context of the Age Discrimination in Employment Act. *Raytheon*, 540 U.S. at 54 n.6; *Anderson v. Diamondback Inv. Grp.*, 117 F.4th 165, 177 (4th Cir. 2024) ("Even when a protected characteristic is 'correlated' with the reason given by an employer for the adverse employment decision, such as an employee's pension status [would be to his age], that doesn't make the reason unlawfully discriminatory." (citing *Hazen Paper Co.*, 507 U.S. at 611)).

The same reasoning applies in the present case. As the Ninth Circuit did in *Raytheon*, the Magistrate Judge erred in this disparate-treatment case by not applying the *McDonnell Douglas* burden-shifting framework for purposes of analyzing whether Defendants are entitled to summary judgment and by, instead, considering whether Defendants relied on a policy that "screen[ed] out" the disabled and whether they

17

established a business necessity defense.  [Doc. 192 at 28–29.]  As in *Raytheon*, "such an analysis is inapplicable to a disparate-treatment claim," 540 U.S. at 55, and thus the Magistrate Judge erred in relying on it when analyzing whether Hall could survive summary judgment.  That Hall's cancer and record thereof were the reason that he did not satisfy the fitness-for-duty standards does not disqualify Hall's failure to satisfy those standards from constituting a legitimate, nondiscriminatory reason for his termination.[5] *See id*. at 54 n.6.

As in *Raytheon*, because the employer's proffered reason for the employment action is legitimate and nondiscriminatory, the only remaining question is whether there is a genuine dispute of material fact concerning whether the proffered reason is a pretext for disability discrimination.  *See  id.* at 51–53 (holding that in a disparate treatment case, the court must look no further than determining whether the employer's legitimate, nondiscriminatory reason was a pretext for acting based on the employee's disability).  There is no such genuine dispute here.  Defendants' evidence was undisputed that under the relevant contract, Occucare was solely responsible for making fitness-for-duty determinations, including whether to apply for waivers; that FFGP employees were not involved in the determination that Hall was not fit for duty or in the decision not to seek a

---

[5] As noted, the *McDonnell Douglas* burden-shifting framework does not apply to the extent there is *direct* evidence of discrimination.  *Barbour v. Garland*, 105 F.4th 579, 590 (4th Cir. 2024).  The Magistrate Judge stated that there is such evidence in this case, but the evidence he referred to is simply evidence that Hall's cancer was the basis for his not meeting the fitness-for-duty requirements.  [Doc. 192 at 28–29.]  Such evidence is not direct evidence of intentional discrimination but, rather, is at most evidence of disparate impact.  *See Raytheon*, 540 U.S. at 54 n.6; *see also Cole v. Fam. Dollar Stores of Md., Inc.*, 811 F. App'x 168, 175 (4th Cir. 2020) ("Direct evidence is evidence of conduct or statements that both reflect directly the allegedly discriminatory attitude and that bear directly on the contested employment decision." (internal quotation marks omitted)).

waiver; and that Occucare did not submit any waivers under MOD 13 for people whose cancer had not yet been in remission for 12 months.[6]  [Docs. 156-6 ¶ 5; 156-39 ¶¶ 3–4.] Accordingly, there is no genuine dispute of material fact concerning whether Defendants' proffered reason was pretextual, and the Court therefore grants Defendants' summary judgment motion regarding Plaintiffs' disparate-treatment claims.[7]

---

[6] The EEOC has argued that FFGP and Occucare "submitted waiver requests to the DoD on behalf of Fluor employees whose cancer had *not* been in remission for a year." [Doc. 162 at 2 (emphasis added) (citing Docs. 154-2 at 159:7–21; 154-15 at 15 (107:18–25, 113:19–23)); *see* Doc. 196 at 18 n.5.]  The deposition testimony Defendants cite includes the testimony of Fluor and Occucare's representatives that Occucare had submitted requests for such employees previously.  [Docs. 154-2 at 22 (159:7–21); 154-15 at 15, 16 (107:18–25, 113:19–23).].  However, Fluor's representative also testified that based on her experience, the CENTCOM surgeon would deny any such waiver request. [Doc. 154-2 at 22 (158:21–159:6).]  And Defendants submitted declarations from these representatives clarifying that they were not aware that any such waiver request had been filed for an employee *under MOD 13*.  [Docs. 156-6 ¶ 5; 156-39 ¶ 4.]  Critically, regardless of whether there were cases in which Occucare submitted waiver requests for employees whose cancer had not been in remission for one year, Plaintiffs have not forecasted any evidence that it was not Occucare's sole responsibility to decide whether to submit waiver requests.  Moreover, that Occucare or Defendants may have been mistaken about whether Hall satisfied the fitness-for-duty requirements or was eligible for a waiver is also immaterial.  *See Holland v. Washington Homes, Inc.*, 487 F.3d 208, 217 (4th Cir. 2007) (holding that a termination for a legitimate, nondiscriminatory reason does not constitute unlawful discrimination even if it is based on a mistake of fact); *Gibson v. Fluor Daniel Servs. Corp.*, 281 F. App'x 177, 179–80 (4th Cir. 2000) (holding that a supervisor's honest but mistaken belief that termination is required is not proof of discrimination); *Dones v. Brennan*, 147 F. Supp. 3d 364, 371–72 (D. Md. 2015) (concluding that a supervisor's mistaken belief that a postal service employee was required to make his request for accommodation to the Department of Labor was a legitimate, non-retaliatory reason for denying the request and not a pretext for retaliation under the Rehabilitation Act).

[7] In opposition to Defendants' summary judgment motion, the EEOC argued that FFGP's delegating the fitness-for-duty and waiver decisions to Occucare is irresponsible and possibly a violation of federal disability laws; that Occucare applied the applicable rules incorrectly; and that FFGP did not make reasonable efforts to verify the accuracy of Occucare's determinations.  [Doc. 162 at 2–4, 22–29.]  Those criticisms notwithstanding, Plaintiffs have not forecasted any evidence from which a jury could reasonably find that Defendants did not actually delegate these decisions to Occucare.

### *The Failure-to-Accommodate Claim*

As noted, although the EEOC's Amended Complaint alleges only a disparate-treatment claim,[8] Hall's Intervenor Complaint also includes a failure-to-accommodate claim.  The Court therefore turns to that claim.

Discrimination in the failure-to-accommodate context includes refusing to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless . . . the accommodation would impose an undue hardship."  *Id.* § 12112(b)(5)(A).  The term "qualified individual" is defined as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  "To show an employer's failure to accommodate, the plaintiff must prove: (1) that [he] had a disability within the statutory meaning; (2) that the employer knew of [his] disability; (3) that a reasonable accommodation would permit [him] to perform the essential functions of the position; and (4) that the employer refused to make the accommodation."  *Perdue v. Sanofi-Aventis U.S., LLC*, 999 F.3d 954, 959 (4th Cir. 2021).

The Magistrate Judge concluded that there were at least genuine disputes of material fact concerning several issues related to Hall's failure-to-accommodate claim: (1) whether Hall had a record of physical or mental impairment that substantially limits

---

[8] The EEOC has moved for partial summary judgment regarding several discrete issues. [Doc. 154.]  Because the Court grants summary judgment to Defendants on the only claim asserted by the EEOC and the EEOC is therefore no longer in the case, the EEOC is not entitled to summary judgment regarding any of these issues, and the Court does not specifically address the EEOC's objections to the Magistrate Judge's recommendations regarding these issues.

one or more major life activities [Doc. 192 at 26–27]; (2) whether sufficient circumstances existed that should have caused Defendants to make appropriate inquiries about the possible need for an accommodation [*id.* at 30–33]; and (3) whether a reasonable accommodation existed that would permit Hall to perform the essential functions of his position, that being either requesting a waiver under MOD 13 or reassigning him to vacant positions for which he was qualified [*id.* at 33–35].  In light of these issues, the Magistrate Judge recommends that Defendants' summary judgment motion be denied regarding Hall's failure-to-accommodate claim.  [*Id.* at 35.]

In their objections, Defendants challenge each of these conclusions.  [Doc. 195.] The Court considers the objections seriatim.

<u>Whether Hall Had a Disability Within the Statutory Meaning</u>

The ADA provides that the term "disability" includes "a physical or mental impairment that substantially limits one or more major life activities" or "a record of such an impairment."[9]  42 U.S.C. § 12102(1).  "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2)(A).  The ADA's implementing regulations state that an impairment constitutes a disability if it "substantially limits the ability of an individual to perform a major life activity as compared to most people in the

---

[9] The ADA's definition of "disability" also includes "being regarded as having such an impairment."  42 U.S.C. § 12102(1)(C).  However, simply being regarded as disabled does not trigger an employer's duty to accommodate and is thus inapplicable to Hall's failure-to-accommodate claim.  42 U.S.C. § 12201(h) ("A covered entity . . . need not provide a reasonable accommodation . . . to an individual who meets the definition of disability in section 12102(1) of this title solely under subparagraph (C)."); *Yoo v. BMW Mfg. Co.*, No. 17-cv-3499-TMC, 2020 WL 415897, at *4 (D.S.C. Jan. 27, 2020).

general population." 29 C.F.R. § 1630.2(j)(1)(ii). They provide that "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Id.* The ADA's implementing regulations reflect that cancer will constitute a disabling impairment "in virtually all cases" because "cancer substantially limits [the major life activity of] normal cell growth." 29 C.F.R. § 1630.2(j)(3); *see, e.g.*, *Donaldson v. Trae-Fuels, LLC*, No. 3:18CV00097, 2019 WL 6646735, at *8 (W.D. Va. Dec. 5, 2019) (finding that the plaintiff's pancreatic cancer substantially limited his major bodily function regarding his normal cell growth).

Determining whether a plaintiff is disabled requires "an individualized inquiry, particular to the facts of each case." *EEOC v. Sara Lee Corp.*, 237 F.3d 349, 352 (4th Cir. 2001). Congress has enacted several rules of construction regarding the definition of disability: (1) the definition should be construed in favor of broad coverage of individuals; (2) "substantially limits" should be interpreted consistently with the findings and purposes of the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (codified at 42 U.S.C. § 12102); (3) an impairment needs to substantially limit only one major life activity to be considered a disability; (4) an impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active; and (5) the determination of whether an impairment substantially limits a major life activity should be made without regard to the ameliorative effects of mitigating measures such as, inter alia, medication and medical supplies. 42 U.S.C. § 12102(4).

Finally, the Court notes that "whether an employee had an impairment and whether the conduct affected is a major life activity are questions of law for the court, but whether the impairment substantially limits the major life activity is a question of fact." *Donald v.*

*S.C. Dep't of Prob. Parole & Pardon Servs.*, No. 3:19-1045-SAL-SVH, 2020 WL 2735981, at *4 (D.S.C. May 7, 2020), *Report and Recommendation adopted by* 2020 WL 2732342 (D.S.C. May 26, 2020); *see Thomas v. City of Annapolis*, 851 F. App'x 341,349 (4th Cir. 2021) (concluding that there was "a genuine issue of material fact as to whether" the plaintiff's impairment interfered with a major life activity to such a degree as to amount to a disability); *J.D. by Doherty v. Colonial Williamsburg Found.*, 925 F.3d 663, 671 (4th Cir. 2019) (concluding that "the district court correctly determined that [the plaintiff] has raised a genuine dispute of material fact as to whether he is disabled").

In support of their summary judgment motion, Defendants argued that Plaintiffs did not forecast evidence sufficient to create a genuine dispute of material fact concerning whether, at the relevant time, Hall had an actual disability or a record of impairment. [Doc. 156-1 at 16–20.] The Magistrate Judge agreed in part with Defendants, concluding that "the evidence in the record fails to show that Hall was actually disabled at the time of his termination," but the Magistrate Judge also concluded that Hall had "a record of impairment because he has a history of cancer, which substantially limits a major life activity." [Doc. 192 at 26–27.] The Magistrate Judge concluded that Hall had a record of impairment because it is undisputed that he received a cancer diagnosis in July 2019 and underwent cancer surgery in August 2019. [*Id.* at 26–27.]

In their objections, Defendants argue that the Magistrate Judge erred in concluding that Hall had a record of impairment. [Doc. 195 at 17–19.] Defendants argue that Plaintiffs cannot show that Hall had a record of impairment because they cannot demonstrate that he has a record of being substantially limited in a major life activity. [*Id.*] Defendants argue that, at the very least, the record-of-impairment issue presents a

genuine issue of material fact and thus the Magistrate Judge erred in affirmatively finding Hall had a record of impairment. [*Id.* at 17.]

"Whether an individual has a record of an impairment that substantially limited a major life activity shall be construed broadly to the maximum extent permitted by the ADA and should not demand extensive analysis." 29 C.F.R. § 1630.2(k)(2). "An individual will be considered to have a record of a disability if the individual has a history of an impairment that substantially limited one or more major life activities when compared to most people in the general population, or was misclassified as having such an impairment." *Id.*

In the Court's view, especially given the requirement that the statutory text be construed broadly in favor of expansive coverage, that Hall underwent surgery to treat his cancer warrants a reasonable inference that it negatively affected his cell growth as compared to most people in the general population. Accordingly, the Court concludes that the forecasted evidence creates a genuine issue of material fact concerning whether the history of Hall's cancer and cancer surgery amounted to a record of impairment so as to satisfy the ADA's definition of disability. *Cf. Watkins v. Shriners Hosps. for Child, Inc.*, No. 5:18-CV-548-REW-MAS, 2020 WL 2309468, at *5 (E.D. Ky. May 8, 2020) (holding that when a plaintiff had been diagnosed with a very aggressive form of nearly stage III invasive breast cancer and had surgery, chemotherapy, and radiation, that was "a strong indication of how the invasive nature of the ductal breast cancer modified [the plaintiff's] cell-growth normalcy" and thus, "even without medical documentation or expert testimony, a juror could reasonably infer that [her] cancer substantially impaired her body's ability to normally grow and produce cells, when compared with the general, non-

cancer-patient population"); *Crider v. Amerigas Propane, Inc.*, No. 1:16-CV-4331-ELR-LTW, 2019 WL 12872651, at *9 (N.D. Ga. Aug. 7, 2019) (concluding that the plaintiff raised a genuine dispute of material fact as to whether he suffered substantial impairment of his ability to have normal cell growth when he had a cancerous tumor on his kidney that he had surgically removed), *vacated in part on other grounds*, 2019 WL 12762940 (N.D. Ga. Aug. 13, 2019).[10]  The Court therefore concludes that Defendants are not entitled to summary judgment on the basis that Hall did not have a disability, within the meaning of the ADA, at the time of his termination.[11]

<u>Whether Hall Requested an Accommodation</u>

Defendants argued in support of their summary judgment motion that Hall never requested an accommodation and thus never triggered Defendants' duty to determine whether an accommodation was available.  [Doc. 156-1 at 21–22.]  The Magistrate Judge

---

[10] Defendants urge the Court to follow *Lusby v. Savannah River Nuclear Solutions, LLC*, No. 1:20-cv-1165-SAL, 2022 WL 897151, at *3–4 (D.S.C. Mar. 28, 2022), wherein the court held that the plaintiff whose records documented cancer treatment were not enough to establish that he had a record of an impairment that substantially limited him in a major life activity.  [Doc. 195 at 18–19.]  The Court declines to do so.  First, *Lusby* noted that the plaintiff did not even allege that his cancer limited him in a major activity, and there is no indication that the treatment the plaintiff received in *Lusby* included surgery.  *Lusby*, 2022 WL 897151, at *4.  Further, the court in *Lusby* provided no discussion concerning whether the plaintiff's documentation of his cancer treatment was sufficient to show that the cancer negatively affected his cell growth as compared to a person without cancer, so as to satisfy the ADA's definition of a "disability."  *See id.*  Nor did it acknowledge the broad interpretation that courts must give to the term "disability."  *Id*. Rather, *Lusby* focused on the fact that the plaintiff's treatments were successful and left him with no further limitations.  *Id.*

[11] The Court agrees, however, with Defendants' argument that the Magistrate Judge erred in affirmatively concluding that Hall had a record of an impairment.  The Court concludes that the forecasted evidence is sufficiently thin on the point such that a reasonable jury could either draw or reject the inference that a record of impairment was established.

concluded, however, that Plaintiffs forecasted sufficient evidence to create a genuine dispute of material fact on this issue by pointing to two accommodation requests Hall testified that he made.  [Doc. 192 at 31–33.]  In their objections, Defendants argue that the Magistrate Judge erred in concluding that Plaintiffs created a genuine dispute of material fact concerning whether he requested an accommodation.  [Doc. 195 at 24–25.]

"The duty to engage in an interactive process to identify a reasonable accommodation is generally triggered when an employee communicates to his employer his disability and his desire for an accommodation for that disability."  *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 346–47 (4th Cir. 2013).  "Before [an employer's] duty to provide reasonable accommodation—or even to participate in the 'interactive process'—is triggered under the ADA, the employee must make an adequate request, thereby putting the employer on notice."  *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1049 (10th Cir. 2011).  "It is not difficult to request an accommodation.  To trigger an employer's duty to accommodate, a disabled employee need only communicate his disability and desire for an accommodation."  *Kelly v. Town of Abbington, Va.*, 90 F.4th 158, 166 (4th Cir. 2024) (cleaned up).  The employee "need not specify the precise limitations resulting from the disability, or identify a specific reasonable accommodation."  *Id.* (cleaned up).  And the employee "need not formally invoke the magic words 'reasonable accommodation.'"  *Id.* at 167 (internal quotation marks omitted).

Hall testified that shortly after he was notified he was being released from the project, he had a phone call with Fluor's April Rabb around August 29, 2019, and he asked, "[I]f I'm not fit to go back to Afghanistan but I'm fit to work, is there any possibility that I could get something anywhere in the States?"  [Docs. 156-3 at 6 (66:3–67:10).]

Rabb told him that they had to "follow protocol" and thus they would follow "whatever [Occucare] said." [Doc. 156-3 (67:11–13).] The Court concludes that, viewed in the light most favorable to Hall, the facts show that Defendants knew that Hall's cancer history was the reason he was not meeting the fitness-for-duty standards that applied to his then-current position. The facts also show that Hall asked to be assigned to another position. The Court concludes, therefore, that there at least is a genuine dispute of material fact concerning whether circumstances existed that should have caused Defendants to make appropriate inquiries about the possible need for an accommodation. *See Wilson*, 717 F.3d at 346–47. The Court therefore overrules Defendants' objection on this point.

<u>Whether a Reasonable Accommodation Was Available for Hall's Record of Disability</u>

The Magistrate Judge concluded a genuine dispute of material fact exists regarding whether submitting a waiver under MOD 13 or reassigning Hall to a vacant position were available accommodations for his record of disability. [Doc. 192 at 33–35.] In their objections, Defendants argue that "[a]n employer's duty to accommodate a 'record of' a disability is intended to allow for follow-up appointments or other items related to a past disability in the record," but that "[t]he accommodations that the Magistrate Judge incorrectly found" as available "in this case did not relate to a past disability, such as follow-up appointments, but [Hall's] . . . outright failure to qualify for deployment under the relevant [DoD] standards—an essential job function." [Doc. 195 at 24.] They also contend that Plaintiffs have not forecasted evidence sufficient to create a fact issue as to

whether Hall was eligible for a waiver or was qualified for any vacant positions. [*Id.* at 25–27.] The Court disagrees with Defendants on both points.

A "reasonable accommodation" is defined to include "making existing facilities used by employees readily accessible to and usable by individuals with disabilities," as well as "job restructuring, part-time or modified work schedules, *reassignment to a vacant position*, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9) (emphasis added). Thus, the definition of "qualified individual" under the ADA "includes employees who could perform the essential functions of a reassignment position, with or without a reasonable accommodation, even if they cannot perform the essential functions of their current position." *Easton v. Aberdeen Police Dep't*, No. SAG-19-3650, 2020 WL 6390656, at *1 (D. Md. Oct. 27, 2020) (internal quotation marks omitted); *see also Wirtes v. City of Newport News*, 996 F.3d 234, 242 (4th Cir. 2021) (explaining that "[r]eassignment is the reasonable accommodation of last resort and is required only after it has been determined that: (1) there are no effective accommodations that will enable the employee to perform the essential functions of his/her current position, or (2) all other reasonable accommodations would impose an undue hardship on the employer" (cleaned up)).

As for accommodating an employee's record of disability, the ADA's implementing regulations provide,

> An individual with a record of a substantially limiting impairment may be entitled, absent undue hardship, to a reasonable accommodation if needed and related to the past disability. *For example, an employee with an impairment that*

28

> previously limited, but no longer substantially limits, a major
> life activity may need leave or a schedule change to permit
> him or her to attend follow-up or "monitoring" appointments
> with a health care provider.

29 C.F.R. § 1630.2(k)(3) (emphasis added). The language in the regulations concerning accommodating a need for follow-up appointments concerns only one "example" of the possible reasons an employee may need an accommodation for a record of disability. *See id.* It does not purport to set out an exhaustive list of the circumstances under which such an accommodation may be needed. *See, e.g.*, *EEOC v. Mfrs. & Traders Tr. Co.*, 429 F. Supp. 3d 89, 107, 109–17 (D. Md. 2019) (holding that when a plaintiff took leave because of her disability and was replaced while she was on leave such that she did not have a position to return to when she was ready to return to work, reassignment was required even though at that point she no longer had an impairment that substantially limited a major life activity).

Additionally, the Court agrees with the Magistrate Judge that Hall's resume at least creates a fact question as to whether he was qualified to perform the essential functions of a vacant position that did not have the same fitness-for-duty requirements.[12] [Doc. 192 at 35.]; *see Williams v. United Parcel Servs., Inc.*, No. 2:10-1546-RMG, 2012 WL 601867, at *5 (D.S.C. Feb. 23, 2012). Accordingly, the Court overrules Defendants' objection to the Magistrate Judge's conclusion that there exists a genuine dispute of material fact

---

[12] Because the Court concludes that a fact issue exists as to the availability of reassignment as an accommodation, the Court does not consider whether Plaintiffs also created a fact issue as to whether applying for a waiver to the MOD 13 requirements to allow Hall to continue to work in his then-current position was also an available accommodation.

concerning whether reassigning Hall to a vacant position was an available accommodation for his record of disability.[13]

## CONCLUSION

Based upon the foregoing, the Court accepts in part, modifies in part, and rejects in part the Report and Recommendation of the Magistrate Judge. For these reasons, Defendants' motion for summary judgment [Doc. 156] is GRANTED in part and DENIED in part, and the EEOC's motion for partial summary judgment [Doc. 154] is DENIED. Defendants' summary judgment motion is granted as to the EEOC's and Hall's disparate-treatment claims and as to their requests for punitive damages and denied as to Hall's failure-to-accommodate claim.

IT IS SO ORDERED.

s/Jacquelyn D. Austin
United States District Judge

Greenville, South Carolina
April 14, 2025

---

[13] The Court also notes two additional aspects of the Report to which the parties have objected. Defendants object to the Magistrate Judge's recommendation that the Court deny Defendants' summary judgment motion concerning whether Hall's sworn statements in an earlier legal proceeding judicially estop him from asserting that he was a qualified individual with a disability at the time he was terminated. [Doc. 195 at 3–11; *see* Doc. 192 at 16–21.] Defendants also object to several statements in the Magistrate Judge's analysis on that issue. [Doc. 195 at 3–5.] And, Plaintiffs object to the Magistrate Judge's recommendation that summary judgment be awarded to Defendants on Plaintiffs' requests for punitive damages. [Doc. 193; 194 at 11–16.] As to the Magistrate Judge's recommendations regarding whether summary judgment should be granted on these two issues, the Court has considered the parties' objections but agrees with the Magistrate Judge's analysis and recommendations. [*See* Doc. 192 at 16–21; 35–37.] As for Defendants' objections to the particular statements in the analysis relating to the judicial estoppel issue, the Court need not address these individual issues at this point as the statements in question do not represent factual findings of the Court.